# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN SCHOLES, IDOC # S00226, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 11-140-GPM |
| | ) |
| FAYETTE COUNTY JAIL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Brian Scholes, a prisoner in the custody of the Illinois Department of Corrections who currently is incarcerated in the Taylorville Correctional Center, brings this action pro se pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights by persons acting under color of state law. This case is before the Court for screening pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

> (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Though the Court is obligated to accept factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Also, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

In Scholes's pro se complaint in this case, Scholes alleges that on November 16, 2009, while Scholes was a prisoner in Defendant Fayette County Jail ("the Jail"), presumably as a pretrial detainee, Scholes was directed by Defendants Miles McConkey and Brian Glidden, Fayette County sheriff's deputies, to get out of bed. As McConkey and Glidden led Scholes down a hall at the Jail, Scholes alleges, McConkey and Glidden proceeded to attack him, Scholes, without provocation, repeatedly administering jolts of electricity to Scholes with a taser gun, jumping on Scholes, forcing a knee into Scholes's chest, and pulling Scholes's hair. Although Scholes pleaded for the assault to stop, McConkey supposedly told Scholes that the attack would not be finished until he, McConkey, was "fucking done." Doc. 1 at 5. After the attack, McConkey reportedly bragged to Scholes, "I really fucked you up, didn't I?" *Id*. at 6. Scholes alleges use of excessive force. Additionally, Scholes claims that he received inadequate medical care in the wake of the alleged assault. Named as Defendants in the case, in addition to the Jail, McConkey, and Glidden, are Arron Lay, the Fayette County sheriff, two unknown parties, Nurse Doe and Dr. Doe, who are health care providers at the

Jail, and Health Professionals, Ltd. ("Health Professionals"), a company that furnishes health care services to prisoners at the Jail. Scholes seeks compensatory damages of $250,000 from each Defendant.

Claims brought pursuant to 42 U.S.C. § 1983, when involving pretrial detainees, arise under the Fourteenth Amendment and not the Eighth Amendment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). However, the United States Court of Appeals for the Seventh Circuit has held that "§ 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999). *See also Mathis v. Fairman*, 120 F.3d 88, 91 n.3 (7th Cir. 1997) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)) ("The rights of a pre-trial detainee under the due process clause of the Fourteenth Amendment are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"). When a prisoner brings an excessive force claim, a court's task "is to determine 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "Whether the defendants' actions were done in a malicious and sadistic manner to cause harm is a strict and fairly high threshold. Factors relevant to [the] inquiry include the nature and extent of the harm, the need for force, the threat to the safety of staff and inmates, and the extent of the injury inflicted on the prisoner." *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "Infliction of pain that is 'totally without penological justification' is *per se* malicious." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)). Still, "not every 'malevolent touch by a prison guard' gives rise to a federal cause of action, even if the use of force in question

'may later seem unnecessary in the peace of a judge's chambers.'" *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001) (quoting *Hudson*, 503 U.S. at 9). Thus, an excessive force claim "cannot be predicated on a *de minimis* use of force" and "[i]nstead, the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Fillmore*, 358 F.3d at 504 (quoting *Hudson*, 503 U.S. at 10). Importantly, however, a prisoner claiming excessive force need not establish serious bodily injury, because otherwise the Constitution "would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9.

Concerning claims for denials of medical care by prisoners, it is well settled, of course, that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). As the Seventh Circuit Court of Appeals has instructed, the Eighth Amendment "imposes upon prison officials the duty to 'provide humane conditions of confinement,' including the obligation to provide medical care to those whom [they have] incarcerated." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Thus, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The second requirement demands that the prisoner satisfy a subjective standard:

"[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). *See also Hudson*, 503 U.S. at 5 (quoting *Estelle*, 429 U.S. at 104) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"). An objectively serious medical need "is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)) (quotation omitted).

With respect to Scholes's excessive force claim, the Court finds that Scholes has stated a claim upon which relief may be granted against McConkey and Glidden. Allegations that prison guards physically beat an unresisting prisoner obviously state a claim for use of excessive force. *See, e.g., Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) (allegations that a prison guard physically pulled a prisoner out of his cell by the prisoner's shoulder and hair, slammed the prisoner's head against the bars of an adjacent cell, and struck the prisoner twice in the face and kneed the prisoner in the groin violated clearly established Eighth Amendment standards). Similarly, Scholes's allegations that he was shocked repeatedly with a taser gun for no reason also rise to the level of a constitutional violation. According to the Seventh Circuit Court of Appeals, a taser gun "sends an electric pulse through the body of the victim causing immobilization, disorientation, loss of balance, and weakness." *Matta-Ballesteros v. Henman*, 896 F.2d 255, 256 n.2 (7th Cir. 1990). Said differently, a taser gun "inflicts a painful and frightening blow that temporarily paralyzes the large muscles of the body, rendering the victim helpless." *Lewis v. Downey*, 581 F.3d 467, 475

(7th Cir. 2009) (brackets omitted). Thus, "the use of a taser gun against a prisoner is more than a *de minimis* application of force." *Id*. With respect to the subjective prong of the Eighth Amendment standard, whether force was applied maliciously and sadistically, the Constitution is not offended when a taser gun "is used 'in a good-faith effort to maintain or restore [prison] discipline.'" *Id*. at 476 (quoting *Hudson*, 503 U.S. at 7). *Accord Jefferson v. Cruse*, 324 Fed. Appx. 599, 599 (9th Cir. 2009) (use of a taser gun to enforce discipline and security and not for the sole purpose of punishment or infliction of pain does not violate the Eighth Amendment); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (use of a taser gun to subdue an unruly prisoner did not violate the Eighth Amendment where there was no evidence that the guards used force sadistically or maliciously to cause harm); *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) (use of a taser gun on a disruptive prisoner to restore discipline and order does not violate the Eighth Amendment). Where Scholes alleges that a taser gun was used on him repeatedly without justification, this states a claim for a deprivation of Scholes's constitutional rights. *See Vasquez v. Gempeler*, No. 06-cv-743-bbc, 2008 WL 2953566, at *2 (W.D. Wis. July 29, 2008) (a prisoner's claim that he was shocked with a taser gun by guards after he had stopped struggling established an excessive force claim); *Williams v. Schueler*, No. 04-C-65, 2006 WL 3469597, at **4-5 (E.D. Wis. Nov. 29, 2006) (a prisoner's claim that two guards restrained him while a third guard repeatedly shocked him with a taser gun established an excessive force claim); *Shelton v. Angelone*, 183 F. Supp. 2d 830, 835 (W.D. Va. 2002) (evidence that prison guards beat and repeatedly shocked a shackled prisoner without justification would support a finding that the guards applied force "maliciously and sadistically"). Scholes may proceed on his excessive force claim against McConkey and Glidden.

With respect to Scholes's allegations of deliberate indifference to his serious medical needs, the Court finds that Scholes has failed to state a claim upon which relief may be granted. Deliberate indifference for Eighth Amendment purposes is "something approaching a total unconcern for [a prisoner's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm[.]" *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (citations omitted). This total disregard for a prisoner's safety is "the functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). Under this standard, "conduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation and brackets omitted). *See also Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)) ("Deliberate indifference 'is more than negligence and approaches intentional wrongdoing' . . . . [D]eliberate indifference is 'essentially a criminal recklessness standard, that is, ignoring a known risk.'"). In this instance, Scholes alleges that McConkey gave him pain medication shortly after the alleged assault, which does not suggest deliberate indifference to Scholes's medical needs. The following day Scholes saw Nurse Doe, who telephoned Dr. Doe, apparently at Scholes's request. Scholes complains that Nurse Doe gave him no treatment and Dr. Doe refused to examine him. However, "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (quoting *Hudson*, 503 U.S. at 9). Also, "[u]nder the Eighth Amendment, [a prisoner] is not entitled to demand specific care" or "the best care possible," only "reasonable

measures to meet a substantial risk of serious harm[.]" *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Moreover, the injuries Scholes describes himself as suffering in the wake of the alleged assault on November 16, 2009, are merely the normal incidents of fighting, e.g., abrasions, bruising, and mild bleeding (including, it appears, some bleeding that occurred when Scholes removed taser prongs from his skin after the alleged assault). Thus, it is not clear what care Scholes expected the medical staff at the Jail to provide him, save to give him aspirin, bandages, and perhaps ice. Simply put, Scholes's injuries were not objectively serious ones to which the medical staff were recklessly indifferent. *See Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (holding that a split lip and a swollen cheek do not rise to the level of an objectively serious medical need); *Murrell v. Bukowski*, No. 08-2044, 2011 WL 884736, at *16 (C.D. Ill. Mar. 11, 2011) (a prisoner's "busted lip" caused by fighting was not objectively serious); *Alvarado v. Battaglia*, 539 F. Supp. 2d 1022, 1027-28 (N.D. Ill. 2008) (a prisoner who suffered a small cut on his lip and made subjective complaints of pain in his groin and knee after a fall in the prison yard did not show the existence of an objectively serious medical need); *Willis v. Scrogum*, No. 04-1413, 2006 WL 2597889, at **6-7 (C.D. Ill. Sept. 8, 2006) (a prisoner who suffered abrasions on his forehead and both sides of his face as well as an abrasion on his lower lip after a fight did not demonstrate the existence of an objectively serious medical need). Finally, although Scholes alleges that he suffers continuing pain, headaches, and nightmares as a result of the alleged assault, he does not allege that he has been denied treatment for these conditions. In sum, Scholes has failed to state a claim for deliberate indifference to his serious medical needs. Therefore, Scholes may not proceed on his claims against Nurse Doe and Dr. Doe.

The Court turns to the matter of Scholes's claims against the Jail and Health Professionals. The Jail is not an entity capable of being sued under 42 U.S.C. § 1983. *See Atteberry v. Marion County Jail*, Civil No. 11-0261-GPM, 2011 WL 1374985, at *3 (S.D. Ill. Apr. 12, 2011); *Hamburg v. Marion County Jail*, Civil No. 11-73-GPM, 2011 WL 334276, at *2 (S.D. Ill. Jan. 29, 2011) (collecting cases). As to Health Professionals, Scholes's complaint is devoid of substantive allegations linking Health Professionals to violations of Scholes's constitutional rights. However, Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Correspondingly, a Section 1983 plaintiff must make allegations that "associate specific defendants with specific claims . . . so [the] defendants are put on notice of the claims brought against them and so they can properly answer the complaint." *Willis v. Hulick*, Civil No. 09-cv-447-JPG, 2010 WL 358836, at *2 (S.D. Ill. Jan. 25, 2010) (citing *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). Put another way, "a Section 1983 plaintiff 'cannot state a claim against a defendant merely by including the defendant's name in the caption' of a complaint." *Sanders v. Reeder*, Civil No. 11-331-GPM, 2011 WL 1768850, at *2 (S.D. Ill. May 7, 2011) (quoting *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998)) (quotation and brackets omitted). Scholes has failed to state a claim against the Jail and Health Professionals.

Finally, with respect to Lay, Scholes's claim against the sheriff is that, following the alleged assault on Scholes by McConkey and Glidden, Lay denied Scholes's request for an investigation of the incident. There is, of course, a constitutional right to address complaints to state officials. *See*

*Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). However, the right to petition the government for redress of grievances "does not require that a government official respond to the grievance." *Jones v. Brown*, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003). Also, just as "a citizen's right to petition the government does not guarantee a response to the petition," so too it does not confer "the right to compel government officials to act on or adopt a citizen's views." *Webb v. Randle*, Civil No. 10-470-GPM, 2011 WL 678815, at *4 (S.D. Ill. Feb. 16, 2011) (quoting *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)) (brackets omitted). The Seventh Circuit Court of Appeals specifically has held that a prison official's denial of a prisoner's complaints about the conditions of his or her confinement, even if wrongful, is not a basis for a claim under 42 U.S.C. § 1983. "Only persons who cause or participate in the violations [of a prisoner's constitutional rights] are responsible [under Section 1983]. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted). Thus, "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id*. at 609-10. *See also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights[.]"). Scholes's claim against Lay is essentially that Lay rejected a complaint by Scholes about a completed act of misconduct on the part of Lay's subordinates at the Jail. Accordingly, Scholes's claim against Lay will be dismissed.

To conclude, pursuant to 28 U.S.C. § 1915A, the Court finds that Scholes's complaint fails to state a claim upon which relief may be granted with respect to Nurse Doe, Dr. Doe, the Jail, Health Professionals, and Lay, and therefore Nurse Doe, Dr. Doe, the Jail, Health Professionals, and

Lay are **DISMISSED with prejudice** from this action. Scholes may proceed on his Eighth Amendment claim against McConkey and Glidden for infliction of excessive force. The Court having determined that Johnson may proceed against McConkey and Glidden, it is hereby **ORDERED** as follows:

1. The Clerk of Court shall prepare for Defendants **McCONKEY** and **GLIDDEN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within thirty (30) days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

2. It is **further ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the Court's file or disclosed by the Clerk.

3. It is **further ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or

counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

    4.    Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

    5.    Pursuant to SDIL-LR 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings.

    6.    Further, this entire matter is **REFERRED** to United States Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

    7.    Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven (7) days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: May 26, 2011

                      /s/ G. Patrick Murphy
                      G. PATRICK MURPHY
                      United States District Judge